AO 106 (Rev. 04/10)  Application for a Search Warrant

**FILED**
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT

for the

District of Kansas

OCT 2 7 2022

Clerk, U.S. District Court
By_____Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with the Yahoo Account identified as priyanatmcclayland23@yahoo.com
that is Stored at Premises Controlled by Yahoo Inc

)
)
)
)
)
)

Case No. 22-MJ- 6300 -01-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Information associated with the Yahoo Account identified as priyanatmcclayland23@yahoo.com
that is Stored at Premises Controlled by Yahoo Inc

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 22 U.S.C. 2778(b)(1)(A)(ii) & (c) | Arms Export Control Act |
| 18 U.S.C. 554 | Smuggling Goods from the United States |
| 18 U.S.C. 1956 | Conspiracy to Launder Monetary Instruments |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE

☑ Continued on the attached sheet.

☑ Delayed notice of *30* days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Marc Neukman, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: *27 Oct 2022 @ 2:49pm*

_____
*Judge's signature*

City and state:  Wichita, Kansas

Honorable Gwynne E. Birzer, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| In the Matter of the Search of Information Associated with Email Account priyanatmcclayland23@yahoo.com that is Stored at Premises Controlled by Yahoo Inc, an Email Provider Headquartered at 1199 Coleman Avenue, San Jose, CA 95110 | Case No. _22-6300-GEB_  **Filed Under Seal** |
|---|---|

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Marc A. Neubauer, being first duly sworn, hereby depose and state as follows:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.    Your Affiant makes this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Yahoo Inc (hereinafter, "Yahoo" or the "Service Provider"), an email provider headquartered at1199 Coleman Avenue, San Jose, CA 95110.  The email account to be searched is priyanatmcclayland23@yahoo.com (hereinafter, the "**TARGET EMAIL ACCOUNT**") and is described in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.    Your Affiant is a Special Agent with Homeland Security Investigations

(HSI) and has been so employed for approximately 12 years.  Prior to my employment with HSI, your Affiant was employed with the United States Marine Corps for approximately six years.  As a requirement for my employment as an HSI Special Agent, your Affiant successfully completed a 12-week Criminal Investigator Training Program (CITP) located at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.  At the conclusion of CITP, your Affiant completed an additional 12-week Immigration and Customs Enforcement Special Agent Training Academy.  As part of my training at FLETC, your Affiant received extensive instruction in the areas of Immigration law, Customs law, firearms training, rules of evidence, and interview techniques.  Your affiant was previously assigned to the Harlingen, Texas office, located on the Southwest border of the United States.  While assigned to the Harlingen, Texas office, your affiant was a member of a Border Enforcement Security Task Force (BEST) unit, which concentrated on the investigations of individuals involved in the illegal trafficking of weapons, from the United States.

3.     As a Special Agent with HSI, your Affiant's duties include, among other things, the investigation of criminal violations of import/export law and violations of the Arms Export Control Act ("AECA") as proscribed by 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), as proscribed by 22 C.F.R § 120, *et seq*.  Moreover, as an HSI Special Agent, your Affiant is generally authorized to investigate violations of the laws of the United States and to execute search and seizure warrants issued under the authority of the United States.

2

4.     Your Affiant is familiar with federal criminal laws relating to the unlawful export of arms and commodities from the United States, as determined by the Department of State (DOS), Directorate of Defense Trade Control (DDTC), the Department of Commerce (DoC), Bureau of Industry and Security (BIS), and the Department of Treasury, Office of Foreign Assets Control (OFAC), as these agencies have statutory responsibility and authority to regulate this area. *See* 22 U.S.C. § 2778; 22 C.F.R. § 120, *et seq*.

5.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

6.     Based on your Affiant's training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that Priyanat MCCLAYLAND (hereinafter, "P. MCCLAYLAND") has committed violations 22 U.S.C. §§ 2778(b)(1)(A)(ii) and 2778(c) (Arms Export without a License); 18 U.S.C. § 554 (Smuggling Goods from the United States); and 18 U.S.C. §§ 1956(a)(2), 1956(h) (Conspiracy to Commit International Money Laundering). There is also probable cause to search the information described in Attachment A for evidence, communications, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## II.     **JURISDICTION**

7.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), & 2703(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. §

2711(3)(A)(i).  As discussed more fully below, P. MCCLAYLAND and others have committed acts within the District of Kansas in furtherance of the offenses under investigation. *See* 18 U.S.C. § 3237.

## III.   EXPORT LAWS AND REGULATIONS

### A. The Arms Export Control Act (AECA) and the International Traffic in Arms Regulations (ITAR).

8.      In "furtherance of world peace and the security and foreign policy of the United States" the United States regulates and restricts the export of arms, munitions, implements of war, and defense articles, pursuant to the AECA, 22 U.S.C. § 2778.  The regulations that govern such exports are entitled the International Traffic in Arms Regulations (ITAR), 22 C.F.R. §§ 120-130.  The ITAR implements the provisions of the AECA and establishes the framework for regulating the export of defense articles.  The DDTC is responsible for administering the ITAR.

9.      The ITAR contains the United States Munitions List (USML), 22 C.F.R. § 121.1. Items and services listed in the USML are deemed "defense articles" and "defense services," and are subject to the ITAR.  The USML sets forth twenty-one categories of defense articles that are subject to export licensing controls by the DDTC, ranging from firearms parts to military equipment to missiles.  22 C.F.R. § 121.1.

10.     The ITAR defines an "export" as, among other things, the sending or taking of a defense article out of the United States in any manner.  Unless an exemption applies, the AECA and the ITAR prohibit all defense articles or defense services from being

exported from the United States without a license from the DDTC.  22 U.S.C. § 2778(b)(2); 22 C.F.R. § 123.1.

11.      Pursuant to Category 1 of 22 C.F.R. § 121.1, gun components and parts require a license from the DDTC.

12.      The AECA establishes criminal penalties for any willful violation of the AECA or the ITAR.  22 U.S.C. § 2778(c).  Under the ITAR, it is unlawful to willfully export or attempt to export from the United States or conspire to export, import, or cause to be exported, any defense article for which a license is required without first obtaining the license.  Additionally, no person may willfully cause, or aid, or abet, counsel, demand, induce, procure, or permit the commission of any act prohibited by the AECA or the ITAR. 22 C.F.R. § 127.1(a)(1).

13.      Pursuant to the ITAR, an export license is required to ship USML items to Thailand and other locations outside of the United States.

### B.  Smuggling Goods from the United States

14.      It is illegal to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object, contrary to any law or regulation of the United States, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.  18 U.S.C. § 554.

### C.  Conspiracy to Commit International Money Laundering

15.     Pursuant to 18 U.S.C. § 1956(a)(2)(A), it is unlawful to transport, transmit, or transfer, or attempt to transport, transmit or transfer, a monetary instrument or funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity.  Moreover, 18 U.S.C. § 1956(h) makes it unlawful to conspire with others to commit international money laundering in violation of 18 U.S.C. § 1956(a)(2)(A).

## IV.     **PROBABLE CAUSE**

16.     In April of 2022, Your Affiant initiated an investigation of Priyanat MCCLAYLAND after receiving information that she and others had purchased a large amount of full auto M-16 lower parts kits.  Multiple United States Postal Service (USPS) packages mailed from an address associated with P. MCCLAYLAND, which contained similar or like full auto M-16 lower parts kits were intercepted, upon outbound inspection, at the international mail branch, located in Chicago, Illinois, at O'Hare Airport.  The customs declaration on the packages contained false information regarding the contents of the package and had not obtained the necessary export license from the U.S. Department of State.

17.     On August 3, 2021, an online order was made from a firearms part supply company, by S. ATTHAWIPHAN.  The order was for three (3) full auto lower parts kits, four (4) three (3) round burst parts kits, four (4) M-16 hammers, and five (5) M-16 full auto sears.  The address associated with order was 4267 Harper Road, Fredonia, Kansas. The phone number associated with the order was 316-730-1930.   The email address

associated with the order was Surachaet1996@gmail.com.  An IP address associated with order was 12.28.15.82.  The total of the order, with shipping, was $965.80.

18.     On January 24, 2022, an online order was made from a firearms part supply company, by S. ATTHAWIPHAN.  The order was for 15 full auto M-16 lower parts kits. The address associated with the order was 4267 Harper Road, Fredonia, Kansas.  The email associated with Surachaet1996@gmail.com.  An IP address associated with the order was 23.185.240.2.  The total of the order, with shipping, was $1,221.85.

19.     On February 23, 2022, an online order was made from a firearms part supply company, by S. ATTHAWIPHAN.  The order was for 18 full auto M-16 lower parts kits. The address associated with the order was 4267 Harper Road, Fredonia, Kansas.  The phone number associated with the order was 316-730-1930.  The email address associated with the order was Surachaet1996@gmail.com.  An IP address associated with the order was 23.185.240.2.  The total of the order, with shipping, was $1,461.82.

20.     On March 4, 2022, an online order was made from a firearms part supply company, by J. ATTHAWIPHAN.  The order was for 17 full auto M-16 lower parts kits. The address associated with the order was 4267 Harper Road, Fredonia, Kansas.  The phone number associated with the order was 316-633-6191.  The email address associated with the order was khongwong2222@gmail.com.  An IP address associated with the order was 23.185.240.2.  The total of the order, with shipping, was $1,381.83

21.     On March 21, 2022, an online order was made from a firearms part supply company, by J. ATTHAWIPHAN.  The order was for six (6) full auto M-16 lower parts

kits. The address associated with the order was 4267 Harper Road, Fredonia, Kansas. The phone number associated with the order was 316-633-6191. The email address associated with the order was khongwong2222@gmail.com. The total of the order, with shipping, was $501.94.

22.   On April 4, 2022, two (2) online orders were made from a firearms part supply company, by J. ATTHAWIPHAN. Each of the two (2) orders was for 30 full auto M-16 lower parts kits. The address associated with the order was 4267 Harper Road, Fredonia, Kansas. The phone number associated with the order was 316-633-6191. The email address associated with the order was ced.45@hotmail.com. An IP address associated with the order was 49.228.165.50, which was located in Bangkok, Thailand. Both of the orders were declined and the orders were not completed. The total of one (1) order, with shipping, was $2,547.70 and the total of the second order, with shipping, was $2,585.31.

23.   On April 25, 2022, an online order was made from a firearms part supply company, by J. ATTHAWIPHAN. The order was for 15 full auto M-16 lower parts kits. The address associated with the order was 4267 Harper Road, Fredonia, Kansas. The phone number associated with the order was 316-633-6191. The email address associated with the order was khongwong2222@gmail.com. The total of the order, with shipping, was $1,221.85.

24.   On April 27, 2022, an online order was made from a firearms part supply company, by Priyanat MCCLAYLAND. The order was for 20 full auto M-16 lower parts

8

kits.  The address associated with the order was 4267 Harper Road, Fredonia, Kansas.  The phone number associated with the order was 620-288-0561.  The email address associated with the order was priyanatmcclayland23@yahoo.com (**TARGET EMAIL ACCOUNT**). An IP address associated with the order was 23.185.240.2.  The total of the order, with shipping, was $1,621.80.

25.     On April 28, 2022, two (2) online orders were made from a firearms part supply company, by Priyanat MCCLAYLAND.  The first order was for 20 full auto M-16 lower parts kits.  The second order was for 10 full auto M-16 lower parts kits.  The address associated with both orders was 4267 Harper Road, Fredonia, Kansas.  The phone number associated with both orders was 620-288-0561.  The email address associated with both orders was priyanatmcclayland23@yahoo.com.  An IP address associated with both orders was 23.185.240.2.  The totals of the orders, with shipping, were $1,621.80 and $821.90.

26.     On April 29, 2022, an online order was made from a firearms part supply company, by Priyanat MCCLAYLAND.  The order was for 20 full auto M-16 lower parts kits.  The address associated with the order was 4267 Harper Road, Fredonia, Kansas.  The phone number associated with the order was 620-288-0561.  The email address associated with the order was priyanatmcclayland23@yahoo.com.  An IP address associated with the order was 23.185.240.2.  The total of the order, with shipping, was $1,701.80.

27.     On or about June 5, 2022, a postal parcel sent, via USPS with USPS tracking number CH163017040US, from 4267 Harper Road, Fredonia, Kansas, an address associated to S. ATTHAWIPHAN and J. ATTHAWIPHAN, was examined at the

9

international mail branch, in Chicago, Illinois, and was found to contain a large quantity of full auto M-16 lower parts kits. The parcel was destined to an address in Thailand. The customs declaration form indicated the package was originally shipped on May 17, 2022 and was described as bicycle gear nut set. The shipper was shown to be Kevin MCCLAYLAND, from the address of 4267 Harper Road, Fredonia, Kansas. The intended recipient of the parcel was shown to be Paiwan MANEEKAN with an address of 99/717 M Romthip Hatairt Road, SOI Hathairt 33 Bang Chan, Kong Samwa, Bangkok, 10510, Thailand.

28.     Also on or about June 5, 2022, a postal parcel sent, via USPS with USPS tracking number CH162538424US, from 4267 Harper Road, Fredonia, Kansas, an address associated to S. ATTHAWIPHAN and J. ATTHAWIPHAN, was examined at the international mail branch, in Chicago, Illinois, and was found to contain 20 full auto M-16 lower parts kits. The parcel was destined to an address in Thailand. The customs declaration form indicated the package was originally shipped on May 17, 2022 and was described as bicycle brake parts. The shipper was shown to be Kevin MCCLAYLAND, from the address of 4267 Harper Road, Fredonia, Kansas. The intended recipient of the parcel was shown to be Paiwan MANEEKAN with an address of 99/717 M Romthip Hatairt Road, SOI Hathairt 33 Bang Chan, Kong Samwa, Bangkok, 10510, Thailand.

29.     On July 2, 2022, an online order was made from a firearms part supply company, by Priyanat MCCLAYLAND. The order was for 28 full auto M-16 lower parts kits. The address associated with the order was 4267 Harper Road, Fredonia, Kansas. The

10

phone number associated with the order was 620-288-0561. The email address associated with the order was priyanatmcclayland23@yahoo.com. An IP address associated with the order was 23.185.240.2. The total of the order, with shipping, was $2,261.72.

30.     On or about July 5, 2022, a postal parcel sent, via USPS with USPS tracking number EH028273959US, from 4267 Harper Road, Fredonia, Kansas, an address associated to S. ATTHAWIPHAN and J. ATTHAWIPHAN, was examined at the international mail branch, in Chicago, Illinois, and was found to contain 20 full auto M-16 lower parts kits. The parcel was destined to an address in Thailand. The customs declaration form indicated the package was originally shipped on June 29, 2022 and was described as bicycle front fork. The shipper was shown to be Priyanat MCCLAYLAND, from the address of 4267 Harper Road, Fredonia, Kansas. The intended recipient of the parcel was shown to be Paiwan MANEEKAN with an address of 99/717 M Romthip Hatairt Road, SOI Hathairt 33 Bang Chan, Kong Samwa, Bangkok, 10510, Thailand.

31.     The aforementioned firearms components are a U.S. defense article and fall under the USML Category I (h)(2) and any lawful export would require a license be issued by the Directorate of Defense Trade Controls (DDTC) of the United States Department of State.

32.     DDTC issued a Pretrial License Determination, dated April 6, 2021, indicating that the aforementioned parts listed in paragraph 16 are covered under the ITAR in Sections 121.1(g) and (h).

33.     As noted in paragraphs 10-12 herein, firearm components are a U.S. defense article and fall under the USML Category I (h)(2) and any lawful export would require a license be issued by the DDTC of the United States Department of State.

34.     Initial database checks with the U.S. Department of State, Directorate of Defense Trade Controls show that P. MCCLAYLAND, S. ATTHAWIPHAN, J. ATTHAWIPHAN nor Kevin MCCLAYLAND have ever applied for or received an export license that would allow for firearms components to be exported lawfully from the United States.

35.     Your Affiant believes there is probable cause to believe that P. MCCLAYLAND and co-conspirators use email account priyanatmcclayland23@yahoo.com (**TARGET EMAIL ACCOUNT**) to facilitate the procurement and export of gun parts without a license from the DDTC in violation of U.S. laws.

36.     On October 6, 2022, HSI special agents sent a preservation request to Yahoo Inc for the **TARGET EMAIL ACCOUNT**.

### ILLEGAL EXPORT METHODOLOGY

37.     Through training and experience, your Affiant has become familiar with a variety of means through which individuals and entities export U.S. origin goods, in violation of the law.  Your Affiant is familiar with illegal export schemes, involving the trans-shipment of commodities through third parties/countries to restricted end-users/destinations.  Your Affiant is generally aware of methods used in the illegal

12

exportation of U.S. technology and goods, as well as the financial transactions supporting those illegal activities.

38.     Based on your Affiant's training, experience, and discussions with other agents who have been involved in the investigation of export-related offenses, your Affiant knows that it is common practice for importers and exporters to retain records relating to their shipments, including records that are associated with illegal shipments of export-restricted items.

39.     Also, based upon my training and experience, your Affiant knows that individuals involved in business and financial transactions generally keep detailed business records.   These business records may include, but are not limited to, correspondence, contracts, contacts, invoices, purchase orders, bank records, financial statements, ledgers, inventories, spreadsheets, air waybills, shipping documents, bills of lading, custom declaration forms, and other paperwork used in the shipment of exports.   Based on my training and experience as a criminal investigator, your Affiant knows that it is common for persons to maintain these records for a period of many years. It is not unusual to find these types of documents in e-mail accounts, given the ease in which email allows individuals to correspond and conduct business with people residing and working in countries around the world.

40.     Your Affiant also knows based on training, experience, and discussions with other agents who have been involved in the investigation of export-related offenses, it is common practice for the importers and exporters to communicate with manufacturers and

13

distributors; freight-forwarding companies; and end-users via e-mail for orders and instructions. They will often also communicate with vendors via e-mail when attempting to purchase commodities. Furthermore, it is common for receipts for purchases made from vendors to be sent to the purchasing individual via email. It is also common to see various receipts or documentation associated with the transfer of funds from the end-user to the exporter, as payment for the shipment of goods, in the exporter's e-mail account.

## BACKGROUND CONCERNING EMAIL

41.    In my training and experience, your Affiant has learned that Yahoo Inc provides a variety of online services, including electronic mail ("email") access, to the public. Yahoo Inc allows subscribers to obtain email accounts at the domain name yahoo.com, like the email accounts listed in Attachment A (the **TARGET EMAIL ACCOUNT**). Subscribers obtain an account by registering with Yahoo Inc During the registration process, Yahoo Inc asks subscribers to provide basic personal information.

42.    In general, an email that is sent to a Yahoo Inc subscriber is stored in the subscriber's "mail box" on Yahoo Inc servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Yahoo Inc servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Yahoo Inc servers for a certain period of time.

43.    Therefore, the computers/servers of Yahoo Inc are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo Inc subscribers) and information concerning subscribers and their use of Yahoo Inc services,

14

such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

44.     A Yahoo Inc subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Yahoo Inc. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

45.     In your Affiant's training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In your Affiant's training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on your Affiant's training and my experience, your Affiant knows that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

46.     In your Affiant's training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

47.     In your Affiant's training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

48.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In your Affiant's training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.   Further, information maintained by the email provider can show how and when the account was accessed or used.   For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access.   By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.   Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).   Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example,

information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

49.     Based on the aforementioned facts, your Affiant believes there is probable cause that P. MCCLAYLAND, an individual in the United States, are currently involved in brokering arms, i.e. negotiating and facilitating the purchase and export of USML items and/or the conspiracy of such, to a Thai national who resides in Thailand, without proper licensing from the DoS for the transaction.  Additionally, there is probable cause that P. MCCLAYLAND have previously knowingly  smuggled and/or conspired to smuggle an export-controlled item without proper licensing to Thailand.   Furthermore, there is probable cause that P. MCCLAYLAND are using the **TARGET EMAIL ACCOUNT** to further their criminal offenses by communicating with their coconspirators in Thailand as well as U.S. weapons companies, including exporters and manufacturers of USML items. Therefore, your Affiant believes the contents of the **TARGET EMAIL ACCOUNT** will disclose information relating to the illegal export of U.S. origin firearms parts to Thailand.

50.     Based on the forgoing, your Affiant requests that the Court issue the proposed search warrant.  Because the warrant will be served on Yahoo Inc, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

51.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Marc A. Neubauer
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on 27th of October, 2022.

Honorable Gwynne E. Birzer
United States Magistrate Judge

## **ATTACHMENT A**

### **Property to Be Searched**

This       warrant       applies       to       information       associated       with
priyanatmcclayland23@yahoo.com that are stored at premises owned, maintained, controlled,
or operated by Yahoo Inc, a company headquartered at 1199 Coleman Avenue, San Jose,
CA 95110.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Yahoo Inc (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on October 6, 2022, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all text messages, voicemails, recorded calls, emails, and chat messages associated with the account from January 1, 2021, to the present including stored or preserved copies of chat logs, emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized including but not limited to:  Yahoo, Yahoo Messenger, Flickr, any and all email address book information, buddy lists, location history and web history;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

f.      A list of all of people, telephone numbers or accounts that are linked to the account, including through third-party applications or websites, along with the identity and contact information for each linked person, telephone number and account, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

g.      All privacy and account settings; and

h.      All information about connections between the account and third-party websites and applications.

The Provider is hereby ordered to disclose the above information to the Government within 21 days of service of this Warrant.

**II.      Information to be seized by the government**

All records and information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 22 U.S.C. §§ 2778(b)(1)(A)(ii),

2778(c) (Arms Export Control Act), Title 18, United States Code, § 554 (Smuggling Goods from the United States) and Title 18, United States Code, §1956 (Conspiracy to Launder Monetary Instruments) have been committed P. MCCLAYLAND and others known and yet unknown occurring after August 3, 2021.

"Records" and "information" include correspondence, contracts, contacts, invoices, purchase orders, bank records, financial statements, ledgers, inventories, spreadsheets, air waybills, shipping documents, bills of lading, custom declaration forms, and other paperwork used in the shipment and transshipment of exports, including, for each account listed in Attachment A, information pertaining to the following matters:

(a) Preparatory steps taken in furtherance of the scheme to export gun parts outside of the United States without the required DDTC license in violation of 22 U.S.C. §§ 2778(b)(1)(A)(ii), 2778(c) and 18 U.S.C. § 554;

(b) Evidence including communications, correspondence, documents, photographs, and records related to purchasing, obtaining, and exporting of arms and U.S.-origin goods in violation of 22 U.S.C. §§ 2778(b)(1)(A)(ii), 2778(c); 18 U.S.C. § 554; and 18 U.S.C. § 1956; discussing and securing payment for such unlawful export of gun parts from the United States to Thailand and other locations outside of the United States, including communications pertaining to banking records and/or financial transactions; and negotiating the sale, transfer, delivery, or transshipment of gun parts outside of the United States without a license from DDTC;

3

(c) Evidence including communications, documents, and records related to how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes listed above and to establish the identity of the person(s) who created or used the email account, including records that help reveal the whereabouts of such person(s);

(d) Evidence indicating the email account owner's knowledge of the Arms Export Control Act ;

(e) Export license applications, export licenses, copies of the AECA or ITAR and any correspondence with the United States agencies involved with export regulations.

(f) Any communications regarding the purchase, shipment and transshipment of export restricted U.S.-origin goods,  including radiation-hardened microchips;

(g) Any and all records of travel; and

(h) Identification of coconspirators, accomplices, and aiders and abettors in the unlawful export of gun parts from the United States.

4

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Yahoo Inc, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Yahoo Inc. The attached records consist of _____. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Yahoo Inc, and they were made by Yahoo Inc as a regular practice; and

b.      such records were generated by Yahoo Inc's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Yahoo Inc in a manner to ensure that they are true duplicates of the original records; and

5

2.      the process or system is regularly verified by Yahoo Inc, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
 Date                                              Signature

6